# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| CEDRIC HOLLOWAY | CIVIL ACTION NO. 05-0617-M |
| VS. | SECTION P |
| SHERIFF MARK W. SHUMATE | JUDGE JAMES |
| | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the court is the civil rights complaint (42 U.S.C. §1983) of *pro se* plaintiff Cedric Holloway filed *in forma pauperis* on April 7, 2005. Holloway is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC); he is presently incarcerated at the Caldwell Correctional Center, Grayson, Louisiana, however, when suit was filed he was incarcerated at the River Bend Detention Center (RBDC), Lake Providence, Louisiana. The suit complains of conditions of confinement at the latter facility.

Plaintiff asked to be transferred to an LDOC facility and sought $100/day for each day that he was incarcerated at the RBDC. He named Sheriff Mark Shumate and Warden Alvin Jones as his defendants.

## STATEMENT OF THE CASE

In his original complaint, plaintiff complained of conditions of confinement at RBDC and specifically complained that the RBDC law library was deficient. He complained that RBDC inmates were housed in a "tent building" and never allowed to go outside; that he and fellow Muslims were not allowed to freely practice their religion; and, that when pork (which Muslims

1

are forbidden to consume) was served, there were no substitutions provided for the Muslims. [See Doc. 1]

On June 30, 2005, Magistrate Judge James D. Kirk completed his initial review of the complaint, and, having found certain specific deficiencies, he ordered the plaintiff to amend his complaint to cure those deficiencies.[1]

On July 26, 2005, plaintiff submitted his amended complaint. In this amended complaint plaintiff claimed that he was housed at the RBDC "...for three years under the authorities of Sheriff Mark Shumate and Warden Alvin Jones..." Plaintiff claimed that he informed Jones of the out-dated law books but Jones did not answer. Plaintiff claimed that he "...filed to the Supreme Court in 2003..." but his "...case was denied." He infers that the Supreme Court's writ denial was due to the fact that he did not have "... adequate time or assistance from person trained in the law and the books was [sic] out dated ..." He claimed that "...on the 22th [sic] day of July 2005 at 9 o'clock I request the inmate lawyer to type of this paper work he informed me that Warden Jones told him not to do it..." Finally, plaintiff claimed, "...if Warden Jones would have gotten the up two [sic] date book's [sic] and placed a trained inmate in the library the outcome of my appeal would have been different, and I wouldn't be suffering monthly..." [See Doc. 7, p. 1]

---

[1] Among other things, plaintiff was advised to amend his complaint and to state specific facts in support of his claim that his constitutional rights had been violated. He was advised that in order to confer liability upon the Sheriff and Warden he must allege facts to show either their personal involvement or their role as policy makers. With regard to his access to court claim, plaintiff was directed to amend his pleadings to show that the alleged library deficiencies resulted in some actual injury or harm to him. As to his free exercise of religion claim, plaintiff was directed to address whether or not alternative means of exercising his rights were provided to him and his fellow Muslim inmates. Finally, plaintiff was specifically admonished to provide some evidence to establish the complete exhaustion of all available administrative remedies. [See Doc. 5]

Thereafter, on August 2, 2005, plaintiff advised the court that he had been transferred to the Caldwell Correctional Center. [Doc. 6]

**<u>LAW AND ANALYSIS</u>**

1. Frivolity Review

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A.*

*(Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's original complaint was determined to be deficient; plaintiff was ordered to amend his complaint to provide sufficient detail so as to enable the court to properly evaluate his claims. Plaintiff's amended complaint did not provide the detailed information requested. Nevertheless, it appears that plaintiff has pled his best case and need not be afforded any further opportunity to amend.

Accepting all of plaintiff's allegations as true, the court concludes, for the reasons stated hereinafter, that he has failed to state a claim for which relief may be granted and accordingly, recommends dismissal of the complaint.

1. Access to the Courts

Plaintiff claims that the defendants have denied him his constitutional right to access the courts because the RBDC law library was stocked with out-dated law books and was not staffed with trained inmate counsel.

"It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999). See *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct.

747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)).

In order to prevail on an access-to-the-court claim, a prisoner must demonstrate that he has suffered "an actual injury" stemming from the alleged defendants' unconstitutional conduct. *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir.1999); *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir.1998). Plaintiff claimed that the actual injury he suffered was the denial an "appeal" by the Louisiana Supreme Court sometime in 2003.

The presumptively reliable published jurisprudence of the State of Louisiana reveals that plaintiff was convicted of attempted possession of cocaine in the First Judicial District Court in Caddo Parish and that on appeal his conviction was affirmed by the Louisiana Second Circuit Court of Appeals on May 16, 2003. *State of Louisiana v. Cedric Holloway*, 37, 021 (La. App. 2 Cir. 5/16/2003), 847 So.2d 200. Plaintiff sought further review in Louisiana's Supreme Court and on December 19, 2003, plaintiff's application for Writ of *Certiorari* and/or Review and his application Supervisory and/or Remedial Writs were denied. *State of Louisiana v. Cedric Holloway*, 2003-1720 (La. 12/19/2003), 861 So.2d 558; *State of Louisiana v. Cedric Holloway*, 2003-1929 (La. 12/19/2003), 861 So. 2d 560.

The undersigned observes that plaintiff's allegations of injury are conclusory at best; he concludes that his writ applications were denied solely because of the fact that he did not have access to up to date law books. Such an allegation is insufficient. As noted above, a civil rights plaintiff must support his claim with <u>specific facts</u> demonstrating a constitutional deprivation and

5

may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Plaintiff was advised of this requirement and admonished to provide specific facts to support his claimed injury. His failure to do so is fatal to his claim.

Nevertheless, even if plaintiff were to provide a more specific allegation concerning the injury suffered, his claim would still be subject to dismissal. The district court is authorized to dismiss a claim as frivolous if "it is clear from the face of a complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations." *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994); *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993). A district court may raise the limitation period *sua sponte*. See *Harris v. Hegmann,* 198 F.3d 153 (5th Cir. 1999).

The Supreme Court has held that the statute of limitations for a §1983 action is the same as the statute of limitations in a personal injury action in the state in which the claim accrues. *Wilson v. Garcia*, 471 U.S. 261, 279-280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1984). The Fifth Circuit has approved application of Louisiana's one-year personal injury statute of limitations provided by La. Civ.Code Ann. art 3492 in a § 1983 action. *Lavellee v. Listi*, 611 F.2d 1129 (5th Cir. 1980).

However, the date of accrual for a §1983 claim is a question of federal law. *Piotrowski v. City of Houston*, 51 F.3d 512 (5th Cir. 1995); *Longoria v. City of Bay City*, 779 F.2d 1136 (5th Cir. 1986). "Under federal law, the limitations period commences when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Piotrowski*, 51 F.3d at 516, quoting *Vigman v. Community National Bank and Trust Co.*, 635 F.2d 455, 459 (5th Cir. 1981). A plaintiff need

6

not realize that a legal cause of action exists but only that the facts support a claim. See, *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983).

As noted above, plaintiff prays for damages against Sheriff Shumate and Warden Jones because their failure to provide an adequate law library resulted in the Louisiana Supreme Court's December 19, 2003 denial of plaintiff's claims. Plaintiff's claim against the defendants thus accrued in December, 2003 when he suffered the injury complained of. Plaintiff thus had one year, or until December, 2004 to file suit against the Warden and Sheriff. The instant suit was filed in April, 2005 and is thus clearly prescribed.

2.. Free Exercise of Religion

Plaintiff alleged that his right to the free exercise of his religion were infringed by the defendants. Of course, as noted in Magistrate Judge Kirk's Memorandum Order of June 30, 2005, inmates such as the plaintiff clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. As further pointed out, lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including institutional security. See *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

The standard for evaluating an inmate's claim that a prison regulation or practice improperly restricts his right to the free exercise of his religion requires the court to evaluate the regulation or practice in order to determine whether it "is reasonably related to legitimate penological interests." *Id.* at 349.

The "reasonableness" of a regulation or practice is evaluated based upon the following

inquiry:

(1) Is there a valid, rational connection between the prison regulation and the legitimate governmental interest put forward by prison officials to justify the regulation?

(2) Are there alternative means of exercising the right that remain open to prison inmates, that is, are inmates allowed other means to express their religious beliefs on a general level?

(3) What impact will accommodation of the asserted constitutional right have on guards and other inmates and on the allocation of prison resources generally?

(4) Are alternatives to the prison regulation available that would accommodate the inmates' rights at a *de minimis* cost to valid penological interests? *Green v. Polunsky*, 229 F.3d 486, 489-90 (5th Cir.2000) (internal quotations and citations omitted); see also *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Each factor need not be considered, and the factors need not be evaluated evenly. *Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 80 (5th Cir.1992).

Plaintiff's complaint is clearly controlled by the Supreme Court's decision in *O'Lone v. Estate of Shabazz, supra*. In that case, the inmate-plaintiffs complained that they were not allowed to attend the weekly Muslim congregational service held on Friday evenings because of their assignments to work details outside the main prison grounds. *O'Lone v. Estate of Shabazz*, 482 U.S. at 345-46. The Supreme Court considered the evidence supplied by the prison administration regarding security needs, rehabilitative needs, and the impact of alternative accommodations; this evidence was evaluated in the light of those rights actually retained by the inmates to practice their religion. The Court then noted that the plaintiff- inmates were not deprived of <u>all</u> forms of religious exercise. Based upon these facts, the Supreme Court held that

8

the "ability on the part of [the inmates] to participate in other religious observances of their faith supports the conclusion that the restrictions at issue here were reasonable." *Id.* at 352.

Plaintiff was advised to amend his complaint to address whether or not alternative means of exercising his rights were provided to him and his fellow Muslim inmates and he declined. Like the plaintiffs in *O'Lone v. Estate of Shabazz*, this plaintiff has not shown that he and his co-religionists have been deprived of <u>all</u> means of religious expression and therefore his exercise of religion claim must also be dismissed.

### 3. Conditions of Confinement

Finally, plaintiff was directed to amend his complaint to flesh out the facts associated with his conditions of confinement claim. Plaintiff had originally alleged that the defendants "...have the inmates housed in a tent building that house[s] 80 inmate[s] we never are allowed to go outside..." Plaintiff did not amend this portion of his complaint. However, in his amended complaint he confirmed that the conditions of confinement at RBDC caused him "mental" suffering. [See Doc. 7] Plaintiff has thus alleged no physical injury resulting from the complained of conditions of confinement during his stay at RBDC.

42 U.S.C. § 1997e was amended by the Prison Litigation and Reform Act of 1996. Under the current version of the statute, prisoners are barred from recovering monetary damages for mental or emotional injuries "unless there is a prior showing of physical injury." *Crawford-el v. Britton*, 523 U.S. 574, 596, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). The "physical injury" required by § 1997e(e) must be more than *de minimis* but need not be significant. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999) (citing *Siglar v. Hightower*, 112 F.3d 191 (5th Cir.1997). The Fifth Circuit has not yet defined the parameters of what constitutes a "physical

9

injury" in this context. However, some guidance in this context is offered by the case of *Luong v. Hatt*, 979 F.Supp. 481 (USDC - ND Tex. 1997). In that case, the court analyzed the "physical injury" requirement in the context of excessive force or failure to protect claims. The court reasoned that the determination of whether or not an injury exceeds the *de minimis* threshold should be determined based upon how "...people in a free world setting in exercising their day-to-day medical care would treat such injuries." *Luong*, 979 F. Supp. at 486.

The court reasoned,

> "Just as an example, there are numerous scrapes, scratches, cuts, abrasions, bruises, pulled muscles, back aches, leg aches, etc., which are suffered by free world people in just every day living for which they never seek professional medical care. Thus, an appropriate *de minimis* standard would be whether as a common-sense category approach to the injury; would the injury require or not require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury? In effect, would only home treatment suffice?
>
> A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care. Thus, the seriousness of the injury needed to rise about [sic] *de minimis*, would ... require more than the types and kinds of bruises and abrasions about which the Plaintiff complains. Injuries treatable at home and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e)." *Id.*

Plaintiff has alleged no physical injury resulting from the complained of conditions at RBDC.. Plaintiff has not even alleged injuries which are *de minimis* and therefore his claim for

monetary damages is legally without merit. See *Herman v. Holiday*, 238 F.3d 660, 666 (5th Cir.2001) (holding that a plaintiff was not entitled to money damages as a matter of law on his claim for mental and emotional stress due to an increased risk of illness, cold showers, cold food, unsanitary dishes, insect problems, inadequate clothing, and the presence of an open cesspool near the housing unit because he did not allege any physical injuries resulting therefrom); *Harper*, 174 F.3d at 719 (finding that a prisoner complaining about his placement in administrative segregation failed to demonstrate a physical injury as required by §1997e(e) sufficient to support a claim for monetary damages); *Alexander v. Tippah County, Mississippi*, 351 F.3d 626, 630-31 (5th Cir.2003), *cert. denied*, --- U.S. ----, 124 S.Ct. 2071, 158 L.Ed.2d 623 (2004) (nausea and vomiting caused by raw sewage on floor of jail cell was *de minimis*).

### 4. Exhaustion of Administrative Remedies

Finally, plaintiff's allegations concerning exhaustion of available administrative remedies are ambiguous at best. He claims that there is no administrative remedies procedure at the RBDC and claims that he did not file a grievance based upon his complaints. However, he claims that the reason he did not file a grievance is "...because the warden never answer them..."

Plaintiff was specifically advised to provide some evidence to substantiate his claims concerning exhaustion of administrative remedies. He has not demonstrated that he has exhausted all available administrative remedies <u>before</u> proceeding in this court. He has not provided copies of the allegedly unanswered ARPs.

The Civil Rights of Institutionalized Persons Act, 42 U.S.C. §1997e(a), which makes the exhaustion requirement mandatory in prison conditions cases, provides as follows:

> (a) Applicability of Administrative Remedies--No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The undersigned also notes that most institutions employ a multi-staged procedure which requires an inmate to appeal negative decisions to progressively higher authorities. Plaintiff is an inmate in the legal custody of the Louisiana Department of Public Safety and Corrections; he is obliged to ultimately appeal adverse decisions of the jail administration to the Secretary of the Department as provided by the law of Louisiana. Administrative remedies procedures have been adopted by the Louisiana Department of Corrections, sheriff's maintaining parish jails or correctional centers, and private corporations maintaining correctional centers. See LSA R.S. 15:1171 *et seq*.; 22 LA ADC Pt. I, § 325(LAC 22:I.325); LR 28:857 (April 2002) (28:4 La.Reg. 857) Administrative Remedies Procedures were clearly available to him. Even if the local authorities ignored his grievances, he was obliged to seek redress with the Secretary of the Louisiana Department of Public Safety and Corrections prior to filing suit. It appears that he did not do so.

Nevertheless, since it is apparent that plaintiff's claims are frivolous, it is deemed more appropriate to dismiss the complaint on that basis rather than on the basis of plaintiff's apparent failure to exhaust administrative remedies. In the event that plaintiff files objections to this Report and Recommendation as provided below, he should include with his objection proof that he fully exhausted administrative remedies by filing grievances with the Secretary of the Louisiana Department of Public Safety and Corrections prior to filing suit.

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 13th day of October, 2005.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE